THE STATE v. HARRY PARKER, Appellant.—24 S. W. (2d) 1023.

Division Two, February 19, 1930.

*Roy Hamlin* and *B. B. Megown* for appellant.

*Stratton Shartel,* Attorney-General, and *Smith B. Atwood,* Assistant Attorney-General, for respondent.

WHITE, J.—The defendant Harry Parker was charged by indictment in the Circuit Court of Ralls County with burglary and larceny. It was alleged that on the night of June 30, 1927, in the County of Ralls he broke into the building of the Kroger Grocery & Baking Company, a corporation, with felonious and burglarious intent, and then and there did steal, take and carry away 2500 pounds of cane sugar of the value of $175.

The defendant, June 29, 1927, informed a colored man named Walter White, who operated a little grocery store in Hannibal, that he, Parker, wanted some sugar; the amount was not stated, but White seemed to know it was large. Another negro named Kipper later joined White in a conference with Parker on the subject. There is nothing in the evidence to indicate that those colored men were

dealers in sugar. On the contrary, they did not know how nor where to procure it. Parker told them to go to the Kroger Grocery store in New London and they would *find* it. On the following night Parker repeated his instructions, and one William Holman, appearing for the first time in the venture, drove up in a Ford car. Kipper and White got in with him. They picked up a fourth man named Dan Anderson and drove to New London, where Holman abandoned the enterprise and vanished. The other three men continued to the rear of the Kroger Grocery & Baking Company store and saw through the rear windows the sugar they were instructed to find. They needed a truck, for they must transport their find. Opportunely a garage of the highway department was maintained in New London and in it was a Chevrolet truck, which the adventurers took and drove back to the Kroger store. They backed it up to the rear of the store, and Kipper effected an entrance through a window while the other men kept a lookout. The three then loaded the truck with twenty-five sacks of sugar, each containing one hundred pounds, and drove with it to Hannibal on Highway 61. At a place known as "Toll Gate House," they turned off the highway, drove across some railroad tracks and stopped to wait for Parker. Parker was late in arriving. They tried to locate him by telephone. Some one in a house near grew suspicious and raised an alarm. Two of the men ran away. White courageously remained by his loot. Parker arrived after a while, said that the situation was "all sweet," and led in a roundabout way with one George Ham in the latter's Ford coupe, the truck load of sugar following. The truck became stalled on a hill, the sugar was unloaded, divided, and Parker took charge of it. The state license was removed from the truck, and the three negroes were instructed by Parker to drive it as near to New London as possible and leave it. That was accordingly done. Ham went along and drove the negroes back to Hannibal in his Ford.

The next day the theft of the sugar and the truck was discovered. A search warrant was obtained and the "Owens place" searched. The officers found there all of the sugar with twelve or fifteen sacks open. The State claims that this indicated an attempt to transfer the sugar to other sacks, numbers of which were lying around.

There was evidence that all the participants in this transaction had bad reputations. The case was made out almost entirely on the evidence of White and Anderson, both of whom were under indictment for the offense. The jury found the defendant guilty of grand larceny, and assessed his punishment at imprisonment in the penitentiary for three years. Judgment followed, and he appealed.

I. Appellant assigns error to the action of the court in overruling his application for change of venue.

He filed five affidavits by five different persons, all in almost exactly the same form, stating that the defendant could not have a fair and impartial trial in Ralls County, because of the bias and prejudice in the minds of the inhabitants of that county. No facts were stated and nothing to show that the affiants resided in different parts of the county, as required by Section 3973, Laws 1921, page 206. These affidavits were in effect the same as a joint affidavit, which this court held insufficient in State v. Bradford, 314 Mo. 1. c. 698, 699.

On suggestion by the court that the affidavits were insufficient, defendant's counsel asked leave to withdraw them and refile them, and offered oral proof to show that the five affiants lived in five different neighborhoods in the county. The court sustained objection to the oral proof and suggested that the defendant might amend his affidavits so as to cover the necessary features omitted. This the defendant declined to do, but offered to prove by witnesses that the inhabitants of Ralls County were prejudiced against the defendant so that he could not have a fair and impartial trial. This, on the theory that under said Section 3973, after filing *two* affidavits as to such prejudice, the defendant may prove the facts. The State objected to such evidence, because no notice of the intended application for change of venue had been served. Section 3973 provides that when a petition for change of venue shall be supported by two disinterested citizens of the county, the allegations of the application shall be proved to the satisfaction of the court, and "the prosecuting attorney may in such case offer evidence in rebuttal of that submitted thereon in support of such application."

The prosecuting attorney would necessarily require reasonable notice in order that he might gather witnesses by whom to present that rebuttal testimony. Since no notice was given the offer of the defendant was properly refused and the application for continuance was properly overruled. [State v. Stough, 318 Mo. 1. c. 1202.]

II. The appellant complains of remarks made by the prosecutor in his opening statement to the jury. The prosecutor said that the police department of Hannibal made a raid on the Owens place and found a quantity of mash. The objection of counsel for the defendant to this remark was sustained, and the jury was instructed not to consider what the prosecutor had said relating to the mash. No reprimand was asked nor any further action of the court was requested by the defendant as to that remark. Another remark was that 2500 pounds

of sugar were found on the Owens place and the premises were in the possession of defendant Parker. This was objected to and the court overruled the objection. It is not shown nor indicated that the prosecutor in making that remark did not expect in good faith to make such showing at the trial. The proof sufficiently shows that Parker took possession of the 2500 pounds of sugar. We think the court could not be convicted of error in that respect.

III. The defendant filed a motion to quash the indictment on the ground that it did not attempt to state the place where the burglary was committed, or describe the building which was entered. The indictment charged the defendant with burglary and larceny in breaking into the building known as the Kroger Grocery & Baking Company store situated in Ralls County. The defendant was convicted of larceny, but acquitted of burglary. He now claims that the charge that he committed grand larceny in Ralls County is not sufficiently definite in locating the place. It is argued that the Kroger Grocery Company was a chain store corporation. The court could not take judicial notice of that fact, and there was nothing to show or indicate that there was more than one Kroger Grocery & Baking Company store in Ralls County. Nothing at the trial indicated any uncertainty or confusion in the mind of defendant as to the whereabouts of that particular store. [State v. Grubbs, 316 Mo. l. c. 245, 246; State v. Tipton, 271 S. W. 55.]

IV. The proof did not show that the defendant broke into the Kroger store, but that he was accessory before the fact; that he hired other men to do the breaking in and to steal the sugar. Appellant complains that the defendant was not charged as an accessory but as a principal, and the proof did not sustain the charge. Section 3687, Revised Statutes 1919, provides that an accessory before the fact in the commission of a felony "may be charged, tried, convicted and punished in the same manner, as the principal in the first degree." This statute has been construed to cover just such cases as this. [State v. Rennison, 306 Mo. l. c. 484; State v. Millsap, 310 Mo. l. c. 513, 514.]

V. The point is made that the court permitted witnesses White and Anderson to be interrogated about other stolen property they had in their possession. Appellant does not point out the particular part of their testimony objected to. It probably relates to the taking of the truck and removing the license plate, all of which evidence was entirely proper as all

this was done in the perpetration of the crime of larceny which the defendant was charged to have committed through the agency of those two men.

VI.  It is claimed that a case was not made out against the defendant:

(a)  Because Anderson and White, on whose evidence the defendant was convicted, were codefendants and therefore not competent witnesses.  They were separately indicted.  They were not joined with the defendant in the same indictment, and therefore they were not codefendants within the meaning of that principle.  Their evidence was competent.

(b)  It is asserted that there was no proof that the Kroger Grocery & Baking Company was a corporation.  Oral evidence offered by the plaintiff showed that it was a corporation, and no objection was made to that evidence at the time it was offered as sufficient to prove the fact.  Besides, it was not necessary to prove that the owner of the sugar was a corporation.  [State v. Carson, 18 S. W. (2d) 457, l. c. 460, 461; State v. Hedgpeth, 311 Mo. l. c. 458.]

(c)  It is claimed further that the evidence was insufficient to make out a case of larceny.  The evidence set out above sufficiently shows that the defendant employed the two men, White and Anderson, to procure the sugar, and told them where to get it, and advised them about the method of getting it. That they took it in Ralls County, hauled it to him, according to his instructions, and he received it.  The case was sufficiently made out, authorizing Instruction Two complained of.

VII.  The appellant contends that his motion for new trial should have been sustained on account of newly-discovered evidence.  The motion sets out facts which it is claimed the newly-discovered witnesses would swear to, but, except in one instance, there is no proof that such witnesses would swear to the facts stated.  The motion does not prove itself.

The one exception was the affidavit of William Orie Holman as to what he knew about it.  Neither his affidavit nor the motion shows that defendant exercised any diligence to find out what Holman knew about it.  It is not shown that he was not present at the trial.  His affidavit shows he was in company with White and Kipper on their ride to New London.  Parker could easily have found that out, for he knew who the State's witnesses were.  March 5, 1928, on application of the prosecutor leave was

granted to endorse on the indictment the names of several witnesses for the State, including Walter White, Dan Anderson and *Orie Holman*. The trial began May 9, 1928. Thus defendant knew two months before the trial that Holman would be a witness; yet he made no effort to find out what Holman would swear to. The court did not err in that respect.

VIII. Appellant assigns error to the failure of the court to instruct on all the law of the case. He has pointed out no particular instruction which the court should have given and failed to give. We have examined the instructions given by the court and we are unable to find any lack of sufficiency on every point involved in the case. A good many assignments in the motion for new trial are not sufficiently specific to meet the requirements of the statutes. We have considered all the errors properly assigned and do not find that the court committed any reversible error.

The judgment is therefore affirmed. *Blair, P. J.,* concurs; *Walker, J.,* absent.