STATE OF MISSOURI, Respondent, v. HELEN DOWLING, Appellant, No. 41745—230 S. W. (2d) 691.

Division One, June 13, 1950.

*Wm. Wayne, Jr.,* for appellant.

*J. E. Taylor*, Attorney General, and David Donnelly, Assistant Attorney General, for respondent.

HYDE, J.—Defendant was found guilty of grand larceny, sentenced to four years in the penitentiary, and has appealed.

Defendant was charged jointly with two other women of stealing goods of Chester Stores, Incorporated, from its store in St. Charles known as the Famous, but was granted a severance and tried separately. The record shows verdict, allocution, judgment and sentence in proper form. It is contended that defendant was entitled to a directed verdict, that the information was fatally defective and that there was error in the instructions.

█ Defendant contends that the information will not support a conviction because it did not sufficiently describe the property alleged to have been stolen. The description in the information was as follows: "One Ladies Coat of the reasonable value of Fifty-five Dollars ($55.00), one Kolinsky Scarf of the reasonable value of Sixty-nine Dollars and ninety-eight cents ($69.98), three silk scrafs of the reasonable value of Two dollars and ninety-eight cents each, eleven pair of ladies hose of the reasonable value of One Dollar and ninety-eight cents ($1.98) each, one purse of the reasonable value of Five Dollars ($5.00) and three billfolds of the reasonable value of One Dollar each, all of the aggregate value of One Hundred Sixty-three dollars and Seventy cents ($163.70) of the goods and chattels of Chester Stores, Incorporated, a corporation."

Defendant cites State v. Jeffords, (Mo. Sup.) 64 S. W. (2d) 241, in which we held the information failed to sufficiently describe the property alleged to have been stolen. However, in that case, "the information only charges the property stolen as 'merchandise to the value of about forty █ dollars'," which of course referred to no specific article of any kind. The statement was made in that case that the property must be described with sufficient particularity to enable the defendant "to plead the judgment rendered thereat in bar of a subsequent prosecution for the same offense, without other proof." This statement was reconsidered in State v. North, 337 Mo. 470, 85 S. W. (2d) 46 and we held that it was too broad but that eliminating the words "without other proof" it was correct. In the North case, we cited a number of cases showing that it has uniformly been held that descriptions of same character as in this case were sufficient. (See also State v. Robinson, (Mo. Sup.) 184 S. W. (2d) 1004; State v. Page, (Mo. App.) 192 S. W. (2d) 577.) We, therefore, hold that the description in this information was sufficient.

█ Defendant's contention that she was entitled to a directed verdict is that the evidence was not sufficient to identify the goods found by the police as those taken from defendant's store or to show they were stolen by her or by anyone acting with her for that purpose; and also that there was no proof that the owner of the goods was a corporation. Sec. 4077, R. S. 1939, Mo. R. S. A. authorizes proof of corporate existence to be shown by parol evidence of general reputation, when it is material. (State v. Willhite, (Mo. Sup.) 159 S. W. (2d) 768; State v. Jackson, 90 Mo. 156, 2 S. W. 128; State

v. Cheek, 63 Mo. 364.) The trial court erroneously excluded such evidence in this case. However, the manager of the store did testify that the store was owned and operated by the Chester Stores of Nashville, Tennessee, and that it was known as Chester Stores, Incorporated. We think this was sufficient under the circumstances of this case or at least that there was no prejudicial error against defendant in failing to require more, when upon defendant's objection the manager was not permitted to answer the direct question: "Do you know of your own knowledge whether or not Chester Stores is incorporated?" As we said in State v. Hedgpeth, 311 Mo. 452, 278 S. W. 740: "Proof of the appellant's guilt of the crimes charged, or either of them, did not depend upon establishing the fact of the oil company's incorporation, but upon the question as to whether the appellant feloniously broke into the premises of another, and, to establish the larceny, that he stole from such premises the property described in the charge. While the corporate existence of the oil company was alleged in the information, it was a mere matter of description to enable the owner to be more readily identified. Whether, therefore, the owner of the premises be a corporation, a partnership, or an individual is not material to the appellant's defense or in the establishment of his guilt." (See also State v. Carson, 323 Mo. 46, 18 S. W. (2d) 457; State v. Parker, 324 Mo. 734, 24 S. W. (2d) 1023; Miller v. United States, (CCA 8th) 295 Fed. 602; State v. Latham, 344 Mo. 74, 124 S. W. (2d) 1089.) We hold that this contention is without merit.

Defendant did not testify and offered no evidence. The following facts were shown by the State. The manager, Mr. Kleyman, saw defendant and two other women together in his store about mid-afternoon. They had some large cardboard suit boxes. (At least one box was fixed so it would open at one end.) Kleyman said he was arranging a show window display at the time. When he went to get a Kolinsky (fur) scarf, which had been hanging on a rod about 15 feet away, it was missing. He found that none of his salespeople had sold it, so he went out on the street and saw defendant and the two other women walk to a car and get in it. He saw them looking at something in the car so he called the police. About the time the police came, the women left the car and went into another store. Kleyman then looked in the car and saw a coat, the fur piece, several silk scarves, several pairs of nylon hose, a handbag and several purses. He identified these articles at the police station as belonging to his store. These articles, as well as the cardboard suit boxes, were in evidence at the trial; and Kleyman testified these articles belonged to his store. The coat was from a line of merchandise that was handled by no other store in St. Charles. There were tags and labels on some of the articles which Kleyman said were the kind

used in his store and that the markings on them were put on by his salespeople under his direction.

On cross-examination he admitted that other stores throughout the country handled similar merchandise and that he did not see defendant or anyone else take the articles. While he said as to being positive about the identity of the silk scarves "I wouldn't have anything to prove it on there", nevertheless he still said that they belonged to his company, that they were the same pattern and same styles as those they had; and that the same thing was true as to the stockings and purses. Other employees of the store testified that defendant and the two other women were in the store on the afternoon when the goods were missed. The manager of another store (Mr. Eddens), where the automobile was parked, saw the women take a large box, shopping bag and other articles to it.

The Chief of Police, who made the arrest, said he followed the women into another store to arrest them, after seeing them get out of the car, when he found out what was in the car. All the articles found in the car were put in sealed boxes and marked by the officers, in the presence of the Sheriff, and were kept locked in a vault until produced at the trial. The seals were not broken until that time. The Chief said one of the women said that they had borrowed the car. Other officers said that defendant told them "a friend of hers let her have it to use;" and that proved to be true when the owner named by her was found.

Defendant, citing State v. Matticker, (Mo.) 22 S. W. (2d) 647, says: "In order to make this conviction stand up you must first infer that the articles mentioned in the information were stolen from the Famous and then you must infer that defendant stole them. The law does not permit one to build inference upon inference as was done in the case at bar." However, there are more facts here than in the Matticker case. Defendant was in the store just before the goods were missed and the goods recovered by the police were found very soon thereafter in the car she had borrowed. Defendant and her companions were seen to take articles to the car and some of these goods had this store's tags and markings on them. The identification of the goods taken was just about as positive as could be made of goods of this character and was certainly sufficient. (See State v. Loges, 339 Mo. 862, 98 S. W. (2d) 564; State v. Hicklin, 358 Mo. 1016, 218 S. W. (2d) 564; State v. Robinson, 354 Mo. 74, 188 S. W. (2d) 664.) Defendant also says there was no evidence that she was in control of the car or that there was a common purpose among the three women to steal; but we think reasonable inferences to so show might be drawn from the statements to which the officers testified and from the facts in evidence. It is true that no one saw defendant or either of the other women actually drive the car or take the goods but they were in this store (and other stores) together and were all

in the automobile together with the goods when the police car arrived and all left it together at that time. Witnesses had seen them go to the car together taking things to it. The jury could reasonably find from all of the facts concerning the disappearance of the goods and the activities of defendant and her companions that they were acting together with a common purpose to steal them. Such common purpose may be shown by circumstantial evidence. (See State v. Hicks, 353 Mo. 950, 185 S. W. (2d) 650; State v. Thornton, (Mo) 58 S. W. (2d) 314; State. v. Pease, (Mo.) 133 S. W. (2d) 409.) We, therefore, hold that the State made a case for the jury.

Defendant also contends that it was error to give Instruction No. 1 on the ground that it was "an abstract declaration of law and no attempt was made to apply it to the facts in evidence," citing State v. Byrnes, (Mo. App.) 177 S. W. (2d) 909; State v. Meininger, 306 Mo. 675, 268 S. W. 71; and State v. Cooper, (Mo. App.) 32 S. W. (2d) 1098. This instruction told the jury that defendant was charged jointly with two others but that defendant alone was on trial, and ended with the following sentence: "All persons are equally guilty who act together with a common intent in the commission of a crime, and a crime so committed by two or more persons jointly is the act of all and each so acting." Defendant does not claim that this statement is incorrect, and Instruction No. 2 did submit the facts shown by the State's evidence. These instructions are closely related and must be considered together; and so considered we hold there is no prejudicial error in them. (See State v. Thornton, (Mo.) 58 S. W. (2d) 314; State v. DeShon, 334 Mo. 862, 68 S. W. (2d) 805.) Defendant further says there was no evidence to show any common purpose to steal this property or that either of the women did steal it. Defendant also says there was no evidence to support Instruction No. 2, which was the main instruction submitting the State's case and authorizing the jury to find defendant guilty of grand larceny. These contentions are ruled by our ruling that the State did make a case for the jury.

Defendant further contends that Instruction No. 6 was erroneous. This instruction was as follows: "The Court instructs the jury that you are the sole judges of the credibility of the witnesses and of the weight and value to be given to their testimony. In determining such credibility and weight you will take into consideration the demeanor of the witness, his or her manner on the stand, his or her interest, if any, in the result of the trial, his or her relation to or feeling towards the defendant or any other witness in the case, the probability or improbability of his or her statements, as well as all the other facts and circumstances given in evidence. In this connection you are further instructed that if you believe that any witness has knowingly sworn falsely to any material fact in issue, you are at liberty to regard as false all or any portion of such witness' testimony."

Defendant says this instruction was confusing and particularly objects to the last sentence because it did not use the word "wilfully", citing State v. Jordon, 285 Mo. 62, 225 S. W. 905; State v. Willard, 346 Mo. 773, 142 S. W. (2d) 1046; and State v. Bradley, 352 Mo. 780, 179 S. W. (2d) 98. A similar instruction using the word "knowingly" was held not erroneous in State v. Hamilton, 304 Mo. 19, 263 S. W. 127; and in State v. Foster, 355 Mo. 577, 197 S. W. (2d) 313. In the latter case, the matter was fully discussed and the earlier cases were reviewed; and we held that the words "wilfully", "intentionally" and "knowingly" meant substantially the same so that either would be proper. Furthermore, we do not see how giving this instruction could have been prejudicial to defendant, since she offered no evidence. (See State v. Burns, 351 Mo. 163, 172 S. W. (2d) 259.) We do not understand why the State offered it, but since the only evidence in the case to which it could apply was the evidence offered by the State, we hold that defendant could not have been prejudiced by it.

The judgment is affirmed. All concur.